Emma MERCADO, Plaintiff–Appellant,

v.

ALLSTATE INSURANCE COMPANY,
Defendant–Appellee.

No. 02–55997.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 2003.

Filed Aug. 18, 2003.

Ralph Rogari, Rehm & Rogari, Los Angeles, CA, for the plaintiff-appellant.

Michael M. Pollak, Daniel P. Barer, Lawrence J. Sher, Pollak, Vida & Fisher, Los Angeles, CA, for the defendant-appellee.

Before THOMPSON, TROTT, and TALLMAN, Circuit Judges.

## OPINION

DAVID R. THOMPSON, Circuit Judge.

Emma Mercado appeals the district court's denial of her motion to remand this insurance bad faith action to state court and the district court's summary judgment in favor of Allstate Insurance Company. Mercado argues the district court erred in concluding that (1) Silvia Luevano was a

sham defendant included in the action to defeat federal jurisdiction; (2) Mercado's bad faith claim against Allstate is foreclosed by *Hamilton v. Maryland Cas. Co.,* 27 Cal.4th 718, 117 Cal.Rptr.2d 318, 41 P.3d 128 (2002); and (3) Allstate did not commit an unfair business practice by insisting that third parties be added as payees to a proposed settlement check, or by failing to increase a $15,000 policy liability limit by $1000 under the policy's medical payments provision. Mercado also contends the district court should have permitted her to submit further evidence in opposition to All-state's summary judgment motion. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

## BACKGROUND

While crossing the street as a pedestrian, Emma Mercado was struck by a car driven by Brenda Brannon. Mercado filed a negligence action against Brannon in state court. Brannon's insurer, Allstate, paid an attorney to defend the case. Settlement discussions ensued. Allstate offered to pay Mercado $15,000, the liability limit of Brannon's insurance policy, provided Los Angeles County, which had rendered medical services to Mercado, and Isaac Nalive, Mercado's former attorney who claimed a lien on any settlement proceeds, were added as payees on the settlement check. Brannon offered to sweeten the pot by adding $5,000 of her own money to the settlement. Mercado rejected the offers.

Mercado and Brannon then entered into a settlement by which Brannon agreed to stipulate to judgment for $150,000 in favor of Mercado, Mercado agreed not to enforce the judgment by levy against any assets of Brannon, and Brannon agreed to assign to Mercado all claims for bad faith against Allstate. Allstate's attorney, Ronald Kent, wrote a letter to Brannon's attorney, Jay McClaugherty, stating that Allstate did "not agree to the transaction contemplated by the agreement," but that McClaugherty should advise Brannon "to take those steps which you believe to be in her best interests." Mercado and Brannon then consummated their settlement. Mercado obtained a stipulated judgment against Brannon for $150,000, and Brannon assigned to Mercado

all claims and causes of action Brannon may now have or hereafter acquire against Allstate based upon the policy, on any breach of the covenant of good faith and fair dealing or its failure and refusal to settle with Mercado, except any claim for emotional distress or punitive damages against Allstate.

Thereafter, Mercado filed the complaint in the present action against Allstate and Silvia Luevano. Luevano was the Allstate employee who had handled the Mercado claim. Mercado alleged that Allstate and Luevano had breached the covenant of good faith and fair dealing. She also alleged that Allstate and Luevano had committed unfair business practices under California Business and Professions Code § 17200 by insisting that Los Angeles County and Attorney Nalive be added as payees on Allstate's proffered $15,000 settlement check, and by not including in its settlement offer an additional $1,000 under the medical payments provision of Brannon's policy.

Allstate removed the case to the district court, and Mercado moved to remand it back to state court. The district court denied the remand motion. The court determined that Luevano had been fraudulently joined as a defendant to defeat diversity jurisdiction, and as a result her presence in the litigation would be disregarded; thus, there was complete diversity between the parties. After a stay of proceedings pending a ruling by the California Supreme Court in *Hamilton v. Maryland Cas. Co.,* 27 Cal.4th 718, 117 Cal.Rptr.2d

318, 41 P.3d 128 (2002), the district court granted summary judgment in favor of Allstate. This appeal followed.

## DISCUSSION

### I. *Fraudulent Joinder*

■ "Fraudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987).

■ All of Mercado's allegations against Luevano pertain to actions she took in her capacity as an Allstate employee. It is well established that, unless an agent or employee acts as a dual agent (a circumstance not present in this case), she cannot be held individually liable as a defendant unless she acts for her own personal advantage.[1] *See McCabe*, 811 F.2d at 1339 (concluding defendant-employees were fraudulently joined because sworn declarations indicated that they acted in the interest of their employer). At all times during her dealings with Mercado, Luevano acted as Allstate's agent. Accordingly, Luevano is not individually liable. *See Lippert v. Bailey*, 241 Cal.App.2d 376, 382–83, 50 Cal. Rptr. 478 (1966) (insurance agents not independently liable for negligent failure to provide adequate insurance); *Good v. Prudential Ins. Co.*, 5 F.Supp.2d 804, 807–09 (N.D.Cal.1998) (insurance agent was a sham defendant because, under *Lippert*, he would not be independently liable for fraud). The district court did not err in concluding that Luevano was a fraudulent-

ly named defendant. Mercado's remand motion was properly denied.

### II. *Allstate's Liability*

Mercado argues the district court erred in concluding that the California Supreme Court's decision in *Hamilton v. Maryland Cas. Co.*, 27 Cal.4th 718, 117 Cal.Rptr.2d 318, 41 P.3d 128 (2002), foreclosed Allstate's liability for the stipulated judgment. She contends the *Hamilton* holding only applies to contract claims for bad faith, not to tort claims for bad faith as in the present case. We disagree.

The relevant facts in the present case are similar to those in *Hamilton,* except for the circumstance that the assigned claim in *Hamilton* was a contract claim for breach of the covenant of good faith and fair dealing, and the assigned claim Mercado is pursuing in the present case is a tort claim grounded in the alleged breach of the covenant of good faith and fair dealing. The *Hamilton* court explained that a bad faith refusal to settle may give rise to either a breach of contract or a tort claim:

> An unreasonable refusal to settle may subject the insurer to liability for the entire amount of judgment rendered against the insured, including any portion in excess of the policy limits. (citations omitted). Though an action for the insurer's breach of the covenant of good faith and fair dealing sounds in both contract and tort (citation omitted), we are concerned here only with liability for breach of contract, for that is the only cause of action [the insured] assigned to plaintiffs.

---

1. An employee acts as a "dual agent" by assuming special duties for the benefit of the insured beyond those required by her principal. *See Jones v. Grewe,* 189 Cal.App.3d 950, 954–55, 234 Cal.Rptr. 717 (1987). Because Luevano did not take on any additional duties for the benefit of Mercado, she was not a dual

agent. *See, e.g., Charlin v. Allstate Ins. Co.,* 19 F.Supp.2d 1137, 1140–41 (C.D.Cal.1998) (concluding joinder of an agent was fraudulent because plaintiff failed to establish he was a "dual agent" by acting beyond his capacity for the insurer).

*Hamilton,* 27 Cal.4th at 725, 117 Cal. Rptr.2d 318, 41 P.3d 128.

The inquiry concerning the breach of the tort duty in this case is the same as the inquiry concerning the breach of the contract duty in *Hamilton.* The salient question in each case is whether the insurer rejected the settlement in good faith, not whether the form of the claim is contract or tort. Accordingly, the *Hamilton* rule applies to the tort claim asserted by the plaintiff in this case. That rule provides that an insurer is not obligated, by the duty imposed upon it through the covenant of good faith and fair dealing, to pay a *stipulated* judgment between its insured and the plaintiff when the insurer is (1) tendering a defense in the action, (2) the insured will suffer no damage from the stipulated judgment, and (3) the insurer did not participate in, nor agree to, the settlement. *See Hamilton,* 27 Cal.4th at 722, 117 Cal.Rptr.2d 318, 41 P.3d 128. The *Hamilton* court made clear, "As long as the insurer is providing a defense [in the underlying action], the insurer is allowed to proceed through trial to judgment [in that action]." *Id.* at 732, 117 Cal. Rptr.2d 318, 41 P.3d 128 (citing *Safeco Ins. Co. v. Superior Court,* 71 Cal.App.4th 782, 788–89, 84 Cal.Rptr.2d 43 (1999)). This is not to say, however, that the insurer may do so without the possibility of adverse consequences if the litigated judgment in the underlying action exceeds the policy limits.

The *Hamilton* rule echoed the rule the California court of appeal articulated in *Safeco.* There, the court of appeal concluded that the plaintiff/assignee could not sue the insurer in tort for its alleged bad faith refusal to settle the case until an excess judgment was rendered after a trial in that case. *See Safeco,* 71 Cal.App.4th at 787–89, 84 Cal.Rptr.2d 43. The reasoning behind the rule is basic fairness: an insurer that tenders a defense does no harm to its insured by declining to settle and taking its chances with a trial. If the trial results in a judgment within the policy limits, the insured is not harmed. If the trial results in a judgment in excess of the policy limits, the insured's remedy is to pursue his own action against the insurer for any bad faith refusal to settle, or to assign that cause of action to the plaintiff in exchange for a covenant not to enforce the judgment against the insured's personal assets. *Id.* at 788, 84 Cal.Rptr.2d 43. It is only after a litigated excess judgment is obtained that an insurer's refusal to settle becomes actionable. *Id.* at 788–89, 84 Cal.Rptr.2d 43. Were this not so, "[t]he potential for abuse is apparent." *Id.* at 787, 84 Cal.Rptr.2d 43. An insurer "in the absence of a breach of its duty to its insured, could be bound by a consent judgment" to which it had not consented. *Id.* (citations omitted).

We conclude that the district court did not err in granting summary judgment in favor of Allstate on the bad faith tort claim. asserted by Mercado.

### III. *Unfair Business Practice*

■ Mercado argues that the district court erred in granting summary judgment in favor of Allstate on her California Business and Professions Code § 17200 claim.[2] She contends that Allstate committed unfair business practices by requiring her to accept co-payees on Allstate's proffered settlement check for $15,000,

---

**2.** California Business & Professions Code § 17200 provides:

As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice

and unfair, deceptive, untrue or misleading advertising....

Cal. Bus. & Prof.Code § 17200 ("The Unfair Business Practices Act").

and by not adding $1,000 from the medical payments provision of the policy to the $15,000 settlement offer.[3] We disagree.

Allstate required the county to be added as a payee because Mercado had incurred county medical expenses and Allstate had a potential liability to the county pursuant to California Civil Code § 3045.4.[4] While it is true that the county's lien would not have been perfected until the county provided a notice pursuant to § 3045.3,[5] Mercado had already received a bill from the County USC Medical Center demanding payment of $8,012. It was reasonable for Allstate to assume that a notice of lien would follow shortly. Moreover, by requiring the addition of the county as a co-payee, Allstate was protecting its insured, Brannon, from any claim against her by the county.

Allstate's requirement that attorney Isaac Nalive (Mercado's former counsel) be added as a payee to the check was justified because Allstate had received Nalive's lien notice. If Allstate chose to disregard Nalive's lien it would have faced liability to him. See Levin v. Gulf Ins. Group, 69 Cal.App.4th 1282, 1287–88, 82 Cal.Rptr.2d 228 (1999) (holding insurer liable to discharged attorney for paying a settlement to former client and new attorney with knowledge of discharged attorney's lien).

Allstate also did not commit an unfair business practice by taking the position that Brannon had only $15,000 in liability coverage and omitting information about the policy's $1,000 medical payments provision. The medical payments provision covered an "insured person" and "any resident relative who sustains bodily injury

3. Allstate erroneously contends that Mercado's claim is an attempt to circumvent the holding of *Moradi–Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal.3d 287, 304, 250 Cal.Rptr. 116, 758 P.2d 58 (1988), which held that violations of California Insurance Code § 790.03 may not serve as a predicate act for a claim pursuant to § 17200. In the present case, Mercado raises the common law claim for breach of the covenant of good faith and fair dealing. California courts have not foreclosed common law theories as a basis for actions pursuant to § 17200. *See Moradi–Shalal*, 46 Cal.3d at 304–05, 250 Cal.Rptr. 116, 758 P.2d 58 ("[C]ourts retain jurisdiction to impose civil damages or other remedies against insurers in appropriate common law actions, based on such traditional theories as fraud, infliction of emotional distress, ... or breach of the implied covenant of good faith and fair dealing ...."); *see also Diaz v. Allstate Ins. Group*, 185 F.R.D. 581, 594–95 (C.D.Cal.1998) (same).

4. Section 3045.4 provides in pertinent part:

Any person, firm, or corporation, including, but not limited to, an insurance carrier, making any payment to the injured person, ..., or legal representative, for the injuries he or she sustained, after the receipt of the notice provided by Section 3045.3, without

paying to the ... body maintaining the hospital the amount of its lien claimed in the notice, or [an amount] ... as can be satisfied out of 50 percent of the moneys due under any final judgment ... after paying any prior liens shall be liable to the ... body maintaining the hospital for the amount of its lien claimed in the notice which the hospital was entitled to receive as payment for the medical care and services rendered to the injured person.

Cal. Civ.Code § 3045.4.

5. Section 3045.3 provides in pertinent part:

A lien shall not be effective, ... unless a written notice containing the name and address of the injured person, ... and the name of each person ... known to the hospital and alleged to be liable to the injured person for the injuries received, is delivered or is mailed ... *The hospital shall, also, deliver ... a copy of the notice to any insurance carrier known to the hospital which has insured the person ... alleged to be liable to the injured person against the liability.* The person, ... alleged to be liable to the injured person shall, upon request of the hospital, disclose ... the name of the insurance carrier which has insured it against the liability.

Cal. Civ.Code § 3045.3 (emphasis added).

while in, on, . . . or when struck by an auto or trailer." Brannon did not sustain any bodily injury, and Mercado was not an insured or a resident relative of an insured. The $1,000 medical payments provision applied to neither of them.

## IV. *Additional Evidence*

Mercado argues that the district court abused its discretion by refusing her request to submit portions of a deposition that would have supported her contention that the letter from Attorney Ronald Kent, Allstate's lawyer, to Jay McClaugherty, Brannon's lawyer, was a sham. This argument is meritless. Mercado's claim that the letter was a sham is predicated upon her contention that Kent was not acting as Allstate's lawyer when the letter was written. But there is nothing in the record to support this contention. Moreover, both Kent and McClaugherty stated that Kent was representing Allstate as its attorney at the time the letter was written. Because Mercado's proffered evidence would have had no effect on the court's summary judgment, the district court did not err in rejecting it. *See* Fed.R.Civ.P. 56(f).

AFFIRMED.